## CONTINUATION OF APPLICATION FOR SEARCH WARRANT

I, Geoffrey Yandl, being duly sworn, depose and state as follows:

### Introduction

1. I am a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been since 2007. I have received training in the investigation of illegal narcotics possession and distribution. I have learned the methods by which narcotics are illegally trafficked and possessed through professional experience as well as my association with other members of law enforcement.

2. I know from training and experience that people use cellular phones to communicate via various means, including by text, social media, internet, email, voice, and voicemail. I also know that people involved in narcotics crimes frequently use cellular phones to facilitate the illegal purchase, transfer, and possession of narcotics. I also know from training and experience that cellular phones take and store photographs. Those who distribute narcotics illegally often take photographs of themselves and their drug supply. Individuals looking to sell and purchase narcotics often communicate with dealers via cellular phone. Cellular phones also store other data that can be recovered forensically even after deletion by the user, as well as Global Positioning System (GPS) data indicating the location of the device at given points in time, providing evidence that the device was in high crime areas or evidencing the route used in trafficking narcotics. Cellular phones also generate internet use history that can reveal the websites or internet queries entered by the person using the device. Further, these types of devices are

frequently used to access social media websites such as Facebook, Instagram, etc. In my training and experience, narcotics traffickers are using social media with increasing frequency to communicate with suppliers and purchasers of narcotics.

3. Based on the information set forth below, there is probable cause to believe that evidence of violations of federal law, specifically, 21 U.S.C. § 841(a)(1), distribution of narcotics, and 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute narcotics, (the **Subject Offenses**) will be found on the following cellular phone: Metro PCS Motorola cell phone assigned number **(231) 683-6435**. This phone was seized from Malachi Lee Walker on 07/02/19, following his arrest for parole violations and is referred to hereinafter as the **Subject Device**. The categories of electronically stored information and evidence sought are described in Attachment B.

4. This Application requests the issuance of a warrant to examine the **Subject Device**. The investigation is ongoing, and there is probable cause to believe that the **Subject Device** will contain evidence of illegal activity relating to a criminal conspiracy and distribution of narcotics.

**Probable Cause**

5. On June 14, 2019, Michigan Department of Corrections (MDOC) inmate Marlon "Lolly" Ezell placed a phone call to telephone number **(231) 683-6435**. The phone number was identified by MDOC as belonging to parolee Malachi Walker. MDOC was aware that Marlon Ezell placed the call because MDOC has the ability to review and monitor inmate phone calls. MDOC reviewed the call placed by Ezell. MDOC ascertained that **(231) 683-6435** was Malachi Walker's

2

number. Walker was on MDOC parole and provided the number to his parole agent as his cell phone number and when Walker was arrested approximately two weeks later, he was in possession of a cell phone with that number.

    6.      The phone call was recorded on the MDOC inmate phone system.  I listened to the contents of that phone call.  The following is a part of the phone conversation:

| | |
|---|---|
| Ezell: | "I'm going to give you this number bro.  I want you to Western Union." |
| Walker: | "Alright, bet. Give me the number you want it Western Union to". |
| Ezell: | "Alright.  909-742-0740." |
| Walker: | "Alright, look.  I'm about to Western Union 50 for you" |
| Ezell: | "Alright.  Make sure you tell them it's coming from your brother Lolly.  Like, this from my brother Lolly" |
| Walker: | "Alright.  I got you." |
| Ezell: | "Ah, You got some ah strips out there?" |
| Walker: | "No.  But they so easy to get." |
| Ezell: | "Yeah? Why you ain't been collecting them for me motherfucker?" |
| Walker: | "Because if you'd have gave me a plug for them, Id'a been did it." |
| Ezell: | "A plug for them?  Bitch, you gotta go to the fiends, bitch." |
| Walker: | "No, I'm talking about where I gotta go to. You feel me?" |
| Ezell: | "Yeah, (unintelligible)." |

| | |
|---|---|
| Walker: | "Alright, look look look.  My man know how to get them.  He know what clinic to go to and get them. So that'll work." |
| Ezell: | "Alright.  What about, what about the trees?  You ain't got no trees?" |
| Walker: | "I got ah, what you got last time ah ah (unintelligible, possibly deano or beano) and ah and ah and ah ah hard" |
| Ezell: | "Alright.  Alright. I'm ah. Man, you can't get no, you can't get no trees?  You can't get like six grams real quick?" |
| Walker: | "I can." |
| Ezell: | "Yeah, do it for me man." |
| Walker: | "I ain't gonna lie. Listen.  I ain't gonna lie and say that's going to be today. I can work, I can work on the strips today.  I ain't going to lie and say the tree going to be today. |
| Ezell: | "I'm going to give you a number" |
| Walker: | "Alright.  What's the number fool?" |
| Ezell: | "231-252-5361.  Now listen.  That's one of the bro's mama.  So she like people to text.  So just text her and say, 'This Lolly brother.  I got something for uh, I got something for uh, Frenchie little brother.  You gotta come pick it up.'" |
| Walker: | "Alright.  I got you fool." |
| Ezell: | "Listen right?  Make it, when you get it right…put it together, you know what I'm saying? So it's already put together. You feel |

4

|  |  |
|---|---|
| | me?  So that shit can go down and that shit.  You know what I'm saying? Get six, do like three and three." |
| Walker: | "I'm gonna get it uh.  I'm gonna to get it all together for you today (unintelligible)." |
| Ezell: | "Alright. And listen (unintelligible) you gotta use that grinder.  Make sure that shit small as fuck bro." |
| Walker: | "I already know." |
| Ezell: | "Make sure you double wrap it.  Call that number or text it and be like, 'let em know to call my phone, come pick this up' when you're ready. |
| Walker: | "Alright.  I got you fool." |
| Ezell: | "Alright. Good looking bro.  I'm going to uh, I'm going to call call you tomorrow or something and we'll talk about what we are going to do about this case, we gotta get this lawyer money together." |
| Walker: | "Alright listen man.  All I wanna know is, who need to get got?" |
| Ezell: | "Alright.  We gonna get, we gonna get around to that too, but I'm gonna shoot them words out." |
| Walker: | "I know what it is man.  Uh, I'm going to make sure I get all of that today man.  The six and the 50 for you." |
| Ezell: | Alright bro.  I love you. |

7. Based on my training and experience, the above conversation discusses an arrangement between Ezell and Walker, and others, to smuggle narcotics into

5

the MDOC prison system. The conversation involved terms previously known to relate to drug activity. For instance, Ezell asked for "trees", known to be marijuana. Walker stated "hard", known to be cocaine base (crack cocaine). There is also conversation about "strips" which Walker could get from "a clinic," which is believed to be a conversation about acquiring suboxone strips from a methadone clinic. Ezell told Walker to "use that grinder", which is a tool used to chop or grind marijuana bud into particles prior to consuming. The conversation occurred on the MDOC inmate phone system and the **Subject Device**.

8. On July 2, 2019, Malachi Walker was arrested by MDOC Parole Agents for parole violations involving the investigation of threatening/terrorist phone calls in the City of Grand Haven. The Grand Haven Department of Public Safety (GHDPS) seized Walker's cell phone, the **Subject Device**, as evidence. A forensic download of the **Subject Device** was created and is maintained by GHDPS as evidence.

9. Regarding any concerns about staleness, the **Subject Device** and its contents were seized approximately two weeks after the conversation outlined in paragraph 6 above. The United States Attorney's office tells me that "[B]usiness records are a type of evidence that defy claims of staleness." *United States v. Abboud,* 438 F.3d 554, 574 (6th Cir. 2006).

10. Based on the above information, as well as my knowledge, training and experience in narcotics investigations, I respectfully submit that there is probable cause to believe that the **Subject Device** contains evidence of the **Subject Offenses**.

11.     The **Subject Device** and its derivative evidence is in storage at the GHDPS. The **Subject Device** is stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as it was when the **Subject Device** was first seized.

### Electronic Storage and Forensic Analysis

12.     The warrant applied for would authorize the extraction and copying of electronically stored information, all under Rule 41(e)(2)(B).

13.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

14.     This application seeks permission to locate forensic electronic evidence that establishes how the **Subject Device** was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Device** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

7

15. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

16. Based on the above facts, I submit there is probable cause to believe that the **Subject Device** described in Attachment A contains evidence and fruits of crimes, as further described in Attachment B, specifically relating to violations of 21 U.S.C. § 841a(1), distribution of narcotics, and 21 U.S.C. § 846, conspiracy, in the Western Judicial District of Michigan.